UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at FRANKFORT

CIVIL ACTION NO. 3:07-34

CELLCO PARTNERSHIP,                                                    PLAINTIFF

v.                                  **OPINION AND ORDER**

FRANKLIN COUNTY, KENTUCKY, et al.,                            DEFENDANTS

**** **** **** ****

This matter is before the Court on the parties' cross-motions for summary judgment (Rec. Nos. 26 and 27). The Plaintiffs challenge the Frankfort/Franklin County Planning Commission's denial of an application to construct a cell phone tower. For the following reasons, the Court will grant the Plaintiffs' Motion for Summary Judgment with regard to their claim under the Telecommunications Act, 47 U.S.C. § 151 *et seq.*, and will otherwise deny it; and the Court will deny the Defendants' Motion for Summary Judgment.

I.      **FACTS.**

The Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon") is licensed by the Federal Communications Commission to provide wireless communications services within its licensed area, including Franklin County, Kentucky. Co-Plaintiffs Julian and Zelma Perkins own real estate in Franklin County. The Perkins and Verizon have entered into a lease agreement which would permit Verizon to construct a 307-foot cell phone tower on the Perkins' property.

A.      **Verizon Agrees to Extensions of Time for Planning Commission to Act.**

Verizon submitted an application to construct the tower to the Frankfort/Franklin County Planning Commission (the "Planning Commission") on July 31, 2006 (Rec. No. 26, Defs.' Mem.,

Ex. 1, Uniform Application).  Under KRS § 100.987(4)(c), a Kentucky state statute, a planning commission must:

> [a]dvise the applicant in writing of its final decision within sixty (60) days, commencing from the date the uniform application is submitted to the planning commission or within a date certain specified in a written agreement between the planning commission and the applicant.  If the planning commission fails to issue a final decision within sixty (60) days and if there is no written agreement between the local planning commission and the applicant providing for a specific date for the planning commission to issue a decision, the uniform application shall be deemed approved.

Verizon and the Planning Commission repeatedly agreed in writing to dates beyond the 60-day period for the Planning Commission to issue a final decision.  On March 8, 2007, the Planning Commission conducted a public hearing on Verizon's application to construct the cell tower. At the hearing, Verizon orally agreed that it "would waive the sixty days . . . .". (Rec. No. 26, Defs.' Mem., Ex. 3, March 8, 2007 Minutes at 9).  The Planning Commission voted to postpone the matter until April 26, 2007. (Rec. No. 26, Defs.' Mem., Ex. 3, March 8, 2007 Minutes at 9).   The following day, Verizon sent the Planning Commission a letter stating:

> On behalf of the applicant it is agreed that a final decision of the above referenced application to construct a wireless telecommunications facility may be made on or before April 26, 2007 as provided by KRS 100.987(4).

(Rec. No. 26, Defs.' Mem., Ex. 12).

### B.     April 26, 2007 – Planning Commission Votes to Deny Application.

At the April 26, 2007 meeting, the Planning Commission denied Verizon's application on the basis of the following factual findings:

> (1) § 6.304(E)(5) of the Franklin County Zoning Ordinance states that one of the criteria to be used in evaluating an application for placement of a wireless communication facility is the "extent to the which the proposal responds to the impact of the proposed development on adjacent land uses, especially in terms of

2

visual impact." Statements received from several of the persons who spoke before the Planning Commission on this matter showed their objection to the visual impact that this tower would have on their enjoyment of their property; and

(2) § 6.304(D)(6) of the Franklin County Zoning Ordinance states that a residential area is the "least preferred location for a wireless communication facility." The proposed location is zoned rural residential, and statements made at the hearing show that the proposed location is in the midst of a number of residences.

(Rec. No. 27, Pfs.' Mem, Ex. A, Meeting Transcript at 103-04).

### C.   May 25, 2007 – Plaintiff's Complaint.

The Plaintiffs filed this action on May 25, 2007. They argue that the Planning Commission's denial of Verizon's application to construct the tower violates the Telecommunications Act ("TCA") at 47 U.S.C. § 332(c)(7)(B)(iii) which provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." The Plaintiffs argue that the Planning Commission's denial violates the TCA because it was neither "in writing" nor "supported by substantial evidence."

The Plaintiffs also argue that the local zoning ordinance upon which the Planning Commission based its decision should be declared void and that their application should be deemed approved under Kentucky state statute KRS § 100.987(4)(c) which, as discussed above, provides that, if a planning commission fails to issue a final decision within sixty days on an application to construct a cellular antenna tower, and if there is no written agreement to the contrary, the uniform application shall be deemed approved.

### D.   Planning Commission Approves Minutes of April 26, 2007 Meeting.

On June 14, 2007, the Planning Commission approved the minutes of its April 26, 2007

3

meeting. (Rec. No. 26, Defs.' Mem., Ex. 10, Hewitt Aff., Ex. B). On June 25, 2007, Robert Hewitt, Director of Franklin County Planning, Zoning and Building Enforcement, sent a memorandum to Verizon's legal counsel stating "[a]ttached are the Planning Commission meeting minutes from March 8 & April 26, 2007, which memorializes in writing the Commission's final decision regarding [Verizon's] application." (Rec. No. 27, Pfs.' Mem., Ex. B, Hewitt Memo). The referenced meeting minutes were attached. (Rec. No. 26, Defs.' Mem., Ex. 10, Hewitt Aff., ¶ 8 & Att. C).

## II.     STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

4

*Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the Court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party.  *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).  The Court is not to judge the evidence or make findings of fact.  *60 Ivy Street Corp.,* 822 F.2d at 1435-36.  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *In re*

*Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

III.    ANALYSIS.

A.    **Whether the Plaintiffs' Action is Timely under the TCA.**

The TCA provides that any "person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

The first issue before the Court is whether the Plaintiffs have filed this action within 30 days of the Planning Commission's "final action" or "failure to act." The Defendants argue that the commission's decision to deny Verizon's application was not "final" until June 14, 2007, when the commission approved the minutes of the April 26, 2007 meeting at which it denied the application. The Plaintiffs filed this action on May 25, 2007, about three weeks before the Planning Commission's June 14, 2007 action. The Defendants argue that this action should therefore be dismissed because it did not occur after a "final action" by the commission. They argue that the Plaintiffs never filed an action after the commission's only "final action" in this matter which occurred on June 14, 2007.

The Plaintiffs do not contest that the Planning Commission's action was not "final" until June 14, 2007 when the commission approved the April 26, 2007 meeting minutes.  *See also Omnipoint Holdings, Inc. v. City of Southfield*, 355 F.3d 601, 603, 605 (6th Cir. 2004)(stating that a city council's vote to deny an application became final when the minutes were approved).   The Plaintiffs argue that their Complaint is nonetheless timely because it was filed within 30 days of the commission's "failure to act" on April 26, 2007 as the parties agreed it would.

6

The parties agreed, as reflected in the March 8, 2007 hearing minutes and transcript and Verizon's March 9, 2007 letter, that the Planning Commission would make a final decision on Verizon's application by April 26, 2007.  There is no dispute that the Planning Commission did not do so. This constitutes a "failure to act," entitling the Plaintiffs to file a complaint in this Court under the TCA.

The Plaintiffs' only other option would have been to allow their 30-day window to expire after the Planning Commission failed to make a final decision on April 26, 2007 on the gamble that the Planning Commission would make a final decision that they could challenge at some point in the future.  If the Planning Commission had never done so, then the Plaintiffs would have lost their only opportunity to contest the Planning Commission's action.

The TCA does not require applicants to gamble in such a manner.  Instead, it allows applicants to contest an action or *failure to act*. Because the Plaintiffs filed this action within 30 days of the Planning Commission's failure to act on April 26, 2007, as the parties had agreed it would, this action is timely.

### B.	Whether the Defendants are Entitled to Eleventh Amendment Immunity.

The Defendants next argue that they are immune from suit under the Eleventh Amendment. The Eleventh Amendment prohibits the "Judicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *U.S. Const. Amend. XI*. Unless Eleventh Amendment immunity is expressly waived, a state and its agencies are immune from an action for damages or injunctive relief in federal court. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th

Cir.1993).  This jurisdictional bar also immunizes a state entity that is an "arm of the State." *See Northern Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006).

"[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002).  In *Gragg*, sovereign immunity was denied to an entity because it failed to show "what degree of control the state maintains over the entity, where the funds for the entity are derived, and who is responsible for the judgment against the entity." *Id.*

The Supreme Court has "repeatedly refused to extend sovereign immunity to counties" even where "such entities exercise a 'slice of state power.' " *Northern Ins. Co.*, 547 U.S. at 193 (citations omitted).  Likewise, the Sixth Circuit has held that counties are not entitled to sovereign immunity under the Eleventh Amendment.  *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984); *Brown v. Marshall County*, 394 F.2d 498, 500 (6th Cir. 1968).

The Defendants have not set forth any reason why, in this particular action, the County should be deemed an "arm of the state."  Accordingly, the Court cannot find that the County is immune from suit under the Eleventh Amendment.  Likewise as to the Planning Commission and the Fiscal Court, the Defendants have put forth no reason why either of these entities should be deemed an "arm of the state."  Accordingly, the Court cannot find that they are entitled to immunity under the Eleventh Amendment.

**C.    Whether the Defendants Satisfied the TCA's Writing Requirement.**

Turning to the substance of the Plaintiff's Complaint, the Plaintiffs assert that the Planning Commission's denial of their application violates the TCA because it was not "in writing" as required by  47 U.S.C. § 332(c)(7)(B)(iii).

8

In *New Par v. City of Saginaw*, 301 F.3d 390 (6th Cir. 2002), the Sixth Circuit held:

> [F]or a decision by a State or local government or instrumentality thereof denying a request to place, construct, or modify personal wireless service facilities to be "in writing" for the purposes of 47 U.S.C. § 332(c)(7)(B)(iii), it must (1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons.

*Id*. at 395-96.

In this action, on June 25, 2007 – after the Plaintiffs had filed their Complaint – Robert Hewitt, Director of Franklin County Planning, Zoning and Building Enforcement, sent a memorandum to Verizon's legal counsel stating "[a]ttached are the Planning Commission meeting minutes from March 8 & April 26, 2007, which memorializes in writing the Commission's final decision regarding [Verizon's] application." (Rec. No. 26, Defs.' Mem., Ex. 10, Hewitt Aff., ¶ 8 & Att. C). There is no question that this memorandum does not meet the *New Par* requirements. While it is separate from the written record, it does not state that the application was denied nor describe the reasons for the denial sufficiently to permit judicial review.

The Defendants argue, however, that the commission's April 26, 2007 meeting minutes which were attached to Hewitt's memorandum meet the *New Par* requirements. They argues these minutes were "separate from the March 8, 2007 minutes that set forth the written record summarizing the evidence and proof taken at the public hearing." (Rec. No. 26, Defs.' Mem. at 23). They further argue that these minutes describe the reasons for the Planning Commission's denial and explain the reasons in sufficient enough detail to allow a reviewing court to evaluate the evidence in the record that supports the reasons.

Under the Sixth Circuit's rulings, however, the April 26, 2007 minutes cannot be considered

"separate from" the written record. Instead, the minutes *are* the written record of the commission's denial of the application. *See T-Mobile Central, LLC v. Grand Rapids*, 2007 WL 1287739, at * 2 (W.D. Mich. 2007). In *Laurence Wolf*, the Sixth Circuit looked at the minutes of two separate meetings of the local zoning board of appeals to determine whether they satisfied the TCA's writing requirement. At the first meeting, the board denied the applicant's request to construct a cellular tower. The court determined that the minutes of this meeting did not satisfy *New Par* because they were not "separate from the meeting's written record concerning other board issues." *Laurence Wolf*, 61 Fed. Appx. at 211. At the second meeting, the board clarified the reasons for its denial. The court determined that these minutes satisfied the TCA's writing requirement because the minutes "concern only the denial of the variance, describe the reasons for the denial, and contain a sufficient explanation of the reasons." *Id*.[1]

   In *Omnipoint Holdings, Inc. v. City of Southfield,* 355 F.3d 601 (6th Cir. 2004), the Sixth Circuit reviewed a formal city council resolution denying an applicant's request to construct a cell tower. The court determined that the "formal resolution is a writing separate from the hearing record" because the records made of the hearings held by the city council and planning commission were separate from the city council's resolution. *Id*. at 606. "Although the *minutes* of a council meeting will encompass all the matters considered by the council at that meeting, each resolution deals with only one discrete subject. In our view this is sufficient to meet the 'separate writing' requirement of *New Par*." *Id*.

   In this case, the April 26, 2007 meeting minutes encompass all the various items that were

---

[1] The Sixth Circuit ultimately determined that the minutes were an impermissible "retroactive cure" because they were issued only in response to a court order after the applicant sued.

on the agenda at the April 26, 2007 meeting, not just the Verizon application. (Rec. No. 26, Defs.'
Mem., Ex. 13).  The Court recognizes that in *Omnipoint Holdings*, in a footnote discussing the
*Laurence Wolf* decision, the Sixth Circuit stated that it rejected "the concept that a resolution in
meeting minutes will never meet the separate writing requirement, if it otherwise allows meaningful
judicial review, simply because the minutes contained other dispositions or resolutions dealing with
other subjects." 355 F.3d at 606 n.6.  Nevertheless, the court did not elaborate on what instances
such a resolution might meet the separate writing requirement.

In *Omnipoint Holdings,* in finding that the resolution in that case met the separate writing
requirement, the court specifically noted that the resolution dealt "with only one discrete subject"
while the minutes included all the matters considered at the particular meeting.  *Id*. at 606.  In
accordance with that distinction and with the Sixth Circuit's decision in *Laurence Wolf*, the April
26, 2007 meeting minutes are not "separate from the written record" and they do not satisfy *New
Par*.

**D.     Whether the Denial is Supported by Substantial Evidence.**

The next issue is whether the Planning Commission's denial of Verizon's application is
supported by "substantial evidence." The Sixth Circuit has recognized that "section 332(c)(7) is a
deliberate compromise between two competing aims – to facilitate nationally the growth of wireless
telephone service and to maintain substantial local control over siting of towers. " *Telespectrum, Inc.
v. Public Service Com'n*, 227 F.3d 414, 423 (6th Cir. 2000)(quotations and citation omitted).

"The TCA does not preempt all authority of state or local governments over the regulation
of wireless towers." *Tenn. ex rel. Wireless Income Prop., LLC v. City of Chattanooga*, 403 F.3d 392,
398 (6th Cir.2005).  The Act specifically provides that "nothing in this chapter shall limit or affect

11

the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A).  Nevertheless, the TCA "imposes several substantive and procedural requirements upon the state or local government's consideration of permit applications ." *Wireless Income Prop.*, 403 F.3d at 398.

These constraints include a prohibition against state and local governments acting in a way that (1) unreasonably discriminates among providers of functionally equivalent services or (2) prohibits or has the effect of prohibiting the supplying of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(I).  As discussed, the constraint at issue in this case requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

"[T]he 'substantial evidence' standard of section 332 is the traditional standard employed by the courts for review of agency action." *Telespectrum*, 227 F.3d at 423.  "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "*New Par*, 301 F.3d at 396 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

> This Court reviews the entire record, including evidence opposed to the result of the decision. We look to whether the agency explained any credibility judgments it made and whether it gave reasons for crediting one piece of evidence over another. This Court must examine the evidence as a whole, taking into account whatever in the record fairly detracts from its weight.

*Telespectrum*,  227 F.3d at 423 (citations omitted).

The TCA's substantial evidence requirement "surely refers to the need for substantial

12

evidence under the criteria laid down by the zoning law itself." *Town of Amherst, N.H. v. Omnipoint Communications*, 173 F.3d 9, 14 (1st Cir. 1999). "The substantial evidence test applies to the locality's own zoning requirements. . . ." *Id*. at 16.

In determining whether the Planning Commission's decision is supported by substantial evidence, the Court has reviewed the entire record. Below is a summary of the relevant portions.

**1)      The Evidence in the Record.**

**a)      The Uniform Application.**

In this case, Verizon stated in its Uniform Application that the proposed tower would be a "300-foot lattice self-support tower, with a 7-foot lightning arrestor attached at the top, for a total structure height of 307 feet." (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 4). Verizon also noted that the land use of the property on which the tower would be constructed was agricultural and residential. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 17). Verizon stated that the tower was necessary to provide or improve wireless service coverage in the area and that it would provide wireless customers in the area with access to and more reliable emergency 911 services. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 18).

Verizon stated that its radio frequency engineers had evaluated the service requirements to be addressed by the facility and determined a search area in which the new facility had to be located to meet service objectives for the site to provide the best quality service to customers in the service area. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 19). The application included a search map depicting the area within which the new tower should be located to satisfy radio frequency requirements. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 19).

Verizon stated that there was no more suitable location reasonably available from which it

13

could provide adequate service to the area. Verizon also stated that there were no suitable co-location opportunities available to meet its service objectives. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 20).  Co-location is the placement of antennas on an existing structure. (Rec. No. 27, Pfs.' Mem., Ex. A,  March 8, 2007 T'script at 13). The application included a list of antenna support structures within a 3-mile radius of the proposed site and an explanation as to why none was a suitable co-location opportunity.  (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 20).  The application stated that the proposed facility would provide or improve Verizon's service in the area. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application, ¶ 23).

   **b)     The Staff Report.**

   On March 8, 2007, Hewitt, Director of Franklin County Planning, Zoning & Building Enforcement, issued a Staff Report to the Planning Commission stating that Verizon's application required a waiver/modification of two provisions of the Franklin County Zoning Ordinance.  (Rec. No. 26, Defs.' Mem., Ex. 2, Staff Report).

   The first provision states that a cellular antenna tower can only be a maximum of 200 feet. The second provision states that, in residential districts, all antenna towers must comply with the setback of that district or a minimum of 25 feet which ever is greater, plus one foot for each two feet of height the tower exceeds the maximum allowable building height.  The report stated that the required setback for the proposed tower would be 161 feet and that Verizon was requesting a 101 foot waiver for the north side of the site and a 79 foot waiver for the east side.

   The Staff Report recommended that the Planning Commission approve the 307-foot height for the tower on condition that Verizon construct a landscape screen of at least 20 feet in width surrounding the area.  The Staff Report also recommended that the commission deny the request for

14

the reduction in setbacks for the north and east sides.

      **c)**      **Evidence Presented by Verizon at the March 8, 2007 Meeting.**

At the March 8, 2007 Planning Commission meeting, David Pike, Verizon's attorney, stated that if the tower were moved to meet the setback requirements, then the tower would have to be taller because the property slopes. (Rec. No. 26, Ex. 3, March 8, 2007 Minutes; Rec. No. 27, Ex. A, March 8, 2007 T'script at 7). Pike stated that the proposed service area was an area of "little or no service" and that, with the proposed tower, Verizon was trying to provide comprehensive coverage in the area. (Rec. No. 26, Ex. 3, March 8, 2007 Minutes; Rec. No. 27, Ex. A, March 8, 2007 T'script at 11). Pike stated that, in order for that to occur, the proposed tower had to be near the center of the area to be served. (Rec. No. 27, Ex. A, March 8, 2007 T'script at 11).

Pike stated that Martin Brown, a real estate appraiser, had conducted a large number of studies on the impact of telecommunications towers on property values. Pike stated that these studies uniformly conclude that telecommunications towers do not impact property values. (Rec. No. 26, Ex. 3, March 8, 2007 Minutes; Rec. No. 27, Ex. A, March 8, 2007 T'script at 16). Pike stated that Brown had determined that the proposed tower would not affect surrounding property values. (Rec. No. 26, Ex. 3, March 8, 2007 Minutes; Rec. No. 27, Ex. A, March 8, 2007 T'script at 16).

Pike testified that William Grigsby, a certified structural engineer, had submitted a report indicating that the tower would exceed all state and federal design requirements and that it would be able to withstand sustained wind speeds of 75 miles per hour or sustained wind speeds of 65 miles an hour with a half inch of radial ice over the whole structure. Grigsby concluded that if there were ever a wind strong enough to bring down the tower, "there would be nothing left standing around it for it to fall onto." (Rec. No. 27, Ex. A, March 8, 2007 T'script at 17). Pike testified that the

nearest residential structure to the tower is 450 feet away.  (Rec. No. 27, Ex. A,  March 8, 2007 T'script at 17).

Cory Kilstrom, a radio-frequency design engineer for Verizon, explained that a 300-foot tower was necessary because it would allow Verizon to interconnect calls or pass calls from one cell to another.  He testified that, if the tower were shorter, then there would be a coverage gap between the two cell towers in the area.  (Rec. No. 27, Ex. A, March 8, 2007 T'script at 26-27).  He also testified that the 200-foot tower would provide service to approximately half the area that a 300-foot tower would cover.  (Rec. No. 27, Ex. A, March 8, 2007 T'script at 30).

At the end of Pike's testimony, radio frequency design engineer Kilstrom, real estate appraiser Brown; and certified structural engineer Grigsby adopted Pike's testimony as their own. (Rec. No. 27, Ex. A, March 8, 2007 T'script at 22).

**d)      Opposition Testimony at the March 8, 2007 Meeting.**

At the hearing, Ethel Lee, who resides on the same road as the proposed tower site, presented a petition signed by residents in the area, stating that they did not want the tower to be constructed at the proposed site.  In their memorandum in support of their motion for summary judgment, the Defendants state that the petition was signed by 72 residents including 13 residents of the properties immediately surrounding the site and sixty (60) other residents of the adjacent Farmdale subdivision. (Rec. No. 26, Defs. Mem. at 24; Rec. No. 26, Defs.' Mem. Ex. 10, Hewitt Aff., Ex.1; Rec. No. 27, Pfs.' Mem.,  Ex. A, March 8, 2007 T'script at 56).  Ethyl Lee testified that her quality of life had already been decreased by the placement of another cell tower within one mile of the proposed site. She testified that she would see the proposed tower when sitting in her backyard.  (Rec. No. 27, Pfs.' Mem., Ex. A, March 8, 2007 T'script at 55-56).

16

Mary Pieratt stated that she and her husband own a farm adjacent to the proposed cell tower and that they had subdivided the farm but not sold any of it. (Rec. No. 27, Pfs'. Mem., Ex. A, March 8, 2007 T'script at 65-66 ). She stated that she could not "imagine that anyone would want to buy land that has a cell tower right beside it." (Rec. No. 27, Pfs.' Mem., Ex. A, March 8, 2007 T'script at 66). The Pieratts also sent letters to the Planning Commission before the March 8, 2007 hearing in which they stated that the tower would be "unsightly and a potential health hazard" and that it would have a substantial negative impact upon the market value of the residential lots of the Pieratts' farm and would make the lots "virtually unmarketable."    (Rec. No. 26, Defs.' Mem., Ex. 11).

Jim Rector testified that when he looked out his back door, the tower would be right in the line of sight.   He testified that he moved to the area for its "rural charm" and that his view from his back porch is currently "serene and virtually unobstructed for miles." (Rec. No. 27, Pfs.' Mem., Ex. A., March 8, 2007 T'script at 67).  He also stated that he believed the tower would put those in his backyard in "imminent danger of being struck by parts or all of the tower when that structure falls." He testified that the tower would be "unsightly" and that he  believed the tower would decrease the "perceived value" of his property.  (Rec. No. 27, Pfs.' Mem., Ex. A., March 8, 2007 T'script at 69).

Jesse Lee testified that when he looks out his back door, he sees a 265-foot tower and that, if the Verizon tower were constructed,  he would have to look at two towers from his back door. (Rec. No. 27, Pfs.' Mem., Ex. A., March 8, 2007 T'script at 70).  He also testified that he guaranteed that the wildlife who now come to his backyard would cease coming.  (Rec. No. 27, Pfs.' Mem., Ex. A., March 8, 2007 T'script at 70-71).  Holly Pieratt testified that he had spoken with the owners of another farm in the area who had expressed an interest in placing the tower on it.  (Rec. No. 27, Pfs.' Mem., Ex. A., March 8, 2007 T'script at 71-72).

17

e)        **The April 26, 2007 Meeting.**

At the April 26, 2007 meeting, the Planning Commission made a factual finding that section 6.304(E)(5) of the local zoning ordinance states that one of the criteria to be used in evaluating an application for a wireless communication facility is the "extent to which the proposal responds to the impact of the proposed development on adjacent land uses, especially in terms of visual impact." The commission also made the finding that several of the persons who spoke before it objected to the "visual impact" the tower would have on their enjoyment of their property.  (Rec. No. 27, Pfs.' Mem., Ex. A, April 26, 2007 T'script at 104).

The commission also voted to make the factual finding that section 6.304(D)(6) of the zoning ordinance states that a residential area is the "least preferred location for a wireless communication facility" and that the proposed location was zoned "Rural Residential."  Further, the commission voted to find that statements made at the hearing showed that the proposed location is in the midst of a number of residences. (Rec. No. 27, Pfs.' Mem., Ex. A, April 26, 2007 T'script at 104).

The commission also made the finding that information received at the hearing included a printout from the applicant's own website which purported to show that Verizon's service already covers the southern portion of Franklin County.  (Rec. No. 27, Pfs.' Mem., Ex. A, April 26, 2007 T'script at 105).

A member of the commission moved that the commission deny the application based on all three of the above factual findings but that motion failed.  (Rec. No. 27, Pfs.' Mem., Ex. A, April 26, 2007 T'script at 107-08).  Another member of the commission noted that the commission had ceased findings of fact and that it had made no findings that would support approving the

18

application, adding "I think we're stuck." (Rec. No. 27, Pfs.' Mem., Ex. A, April 26, 2007 T'script at 108). A member of the commission then moved that the application be denied based on only the first and second findings discussed above. (Rec. No. 27, Pfs.' Mem., Ex. A, April 26, 2007 T'script at 109). That motion carried.

>    **2)      Analysis of the Evidence.**

Thus, the evidence in the record before the Planning Commission consisted of the testimony and report of a radio-frequency engineer demonstrating the need for the proposed tower and that there was no other suitable location. Likewise, the record included the testimony and report of a structural engineer attesting to the structural soundness and safety of the proposed tower. Finally, the record included the report and testimony of a real estate appraiser concluding that the proposed tower would not decrease property values in the area.

Area residents questioned the safety of the proposed tower, the need for it, whether there were other suitable locations for it, and whether it would affect property values. There is no evidence, however, that any of these residents had any personal knowledge regarding these issues. Nor did any of these residents offer any evidence in support of their concerns. Thus, this testimony is "unsupported opinion," and does not constitute evidence supporting the Planning Commission's denial of the application. *Telespectrum*, 227 F.3d at 424; *see also New Par*, 301 F.3d at 399 n. 4 (community concerns based upon conjecture or speculation lack probative value and will not amount to substantial evidence).

Accordingly, the testimony presented by Verizon regarding the safety of the tower, the need for it, whether there were other suitable locations for it and its affect on property values was uncontradicted. But the Planning Commission did not deny the application on any of these grounds.

Instead, it denied the application on the grounds that the local zoning ordinance requires it to consider the visual impact of the proposed tower and that several of the persons who spoke before it objected to the visual impact of the tower.  The Planning Commission also denied the application on the grounds that the zoning ordinance provides that a residential area is the least preferred place to locate a communications tower, that the proposed site was zoned Rural Residential, and there were many residences in the area.

As to the second grounds for denial, subsection 6.304(D)(6) provides that, unless the applicant is co-locating, the application for the construction of a cellular antenna tower must include a statement, supported by evidence, that "there is no other site which is materially better from a land use perspective within the immediate area for the location of the telecommunications facility." (Rec. No. 26, Defs.' Ex. 8, Ordinance No. 15, 1999 Series, Section 6.30 Wireless Communications Facilities, Subsection 6.304(D)(6), p. 14).  The application must include a list of potential sites within a one-mile radius of the proposed tower location, a description of potential sites, and a discussion of the ability or inability of the sites to host a cellular antenna tower.

The zoning provision also states that the following with regard to potential sites for the tower:

> Potential sites that should be considered (in order from most preferred to least preferred) include:  existing utility towers, highway rights-of-way (except designated parkways), industrial districts, airports, public facilities, office towers, commercial districts and commercial centers, agricultural districts and *residential towers*. Desirable locations include water towers, radio, and television towers, tall buildings, signs, steeples, and flag poles. Stealth technology is encouraged.

(Rec. No. 26, Defs.' Ex. 8, Ordinance No. 15, 1999 Series, Section 6.30 Wireless Communications Facilities, Subsection 6.304(D)(6), p. 14)(emphasis added).

Thus, subsection 6.304(D)(6) does indicate that a residential area is the least preferred location for a communications tower. Nevertheless, this alone is not substantial evidence supporting the denial of the application. The ordinance does not provide that an application must be denied simply because it is located in a residential area. In fact, the Uniform Application indicates that there are at least four other towers within a three-mile radius of the proposed site, one of which is approximately 265 feet tall. (Rec. No. 26, Defs.' Mem., Ex. 1, Uniform Application , Ex. K; Rec. No. 27, Pfs. Mem., Ex. A, March 8, 2007 T'script at 38). Thus, without some additional evidence as to how Verizon's proposed tower would negatively impact the residential character of the proposed site, the fact that the proposed site is located in a residential area is not substantial evidence supporting the denial of the application.

The commission also found that the proposed site was zoned Rural Residential. A local zoning ordinance explains that a "Rural Residential" zoning district is "intended to establish and preserve a quiet single family home neighborhood, free from other uses except those which are convenient to and compatible with the residences of such neighborhood. This district is intended to be very low density and will customarily be located in areas where public sewer facilities are not available or planned." (Rec. No. 26, Defs.' Mem., Ex. 4, Franklin County Zoning Ordinance 4.11, Subsection 4.111). The General Uses of such zoning districts are single family homes. Home occupations, nursery schools and day care centers, elementary and secondary schools, parks and public recreation facilities are permitted with the Board of Adjustments' approval.

Again, however, the ordinance does not prohibit the construction of a communications tower in areas zoned Rural Residential. Thus, without some evidence demonstrating that the proposed tower would be incompatible with the rural residential character of the proposed site, the simple fact

21

that the proposed site is zoned Rural Residential is not a sufficient basis to deny the application.

There was some testimony regarding the "visual impact" of the proposed tower. This was the second grounds that the commission relied upon in denying the application. In analyzing the evidence regarding the visual impact of the tower, the Court first notes that the petition signed by 72 residents in the area does not constitute such evidence. The petition states only, "[w]e the undersigned property owners and/or citizens DO NOT WANT the [Verizon] Cell tower to be placed at" the proposed location. (Rec. No. 26, Defs.' Mem., Ex. 10, Hewitt Aff. Ex. A). While it is clear that the signers generally object to the placement of the tower, the petition does not state the specific grounds upon which they object to it. They may object to the tower on the basis of its visual impact or, like others who testified at the hearing, the petitioners may object to the tower on an unsupported belief that it is will decrease property values or pose a safety hazard;  or the petitioners' may object to the tower on some other grounds not raised in the meeting. Thus, the petition does not constitute evidence of the tower's negative visual impact.

Five area residents did express some objection to the visual impact of the tower, either through testimony or letters to the Planning Commission: Ethyl Lee, Jesse Lee, Jim Rector, and the Pieratts. However, in *New Par*, the court stated that "a few generalized expressions of concern with 'aesthetics' cannot serve as substantial evidence on which the Town could base the denials." *New Par*, 301 F.3d at 398 (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 496 (2d Cir.1999). In that case, the court found that the fact that "aesthetic concerns were mentioned only a few times, and they were never discussed" at the local zoning board meetings was not substantial evidence of the proposed tower's negative visual impact. *Id.*

In *Cellular Tel. Co.*, upon which the court relied in *New* Par, the Second Circuit determined

that the board's denial of an application lacked substantial evidence where "[v]ery few residents expressed aesthetic concerns at the hearings, and those who did express them did not articulate specifically how the proposed cell sites would have an adverse aesthetic impact on the community." 166 F.3d at 495. The Second Circuit further noted that "a few comments suggested that the residents who expressed aesthetic concerns did not understand what the proposed cell sites would actually look like." *Id.*

In *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Tp.*, 181 F.3d 403 (3rd Cir. 1999), which the Sixth Circuit also cited approvingly in *New Par*, the Third Circuit found the zoning board's decision lacked substantial evidence regarding the aesthetic impact of a proposed tower where "[e]leven neighbors asserted that the monopole would be visible over the tree line and would damage their property values. But [the person], who spoke for all eleven neighbors, addressed the visibility of the tower only briefly and presented no evidence regarding property values." *Id*. at 409.

In *Laurence Wolf*, the Sixth Circuit found that the fact that two citizens expressed aesthetic concerns with the placement of a tower and that the local board of zoning appeals expressed similar concerns based on computer-simulated before-and-after images of the proposed site did not constitute substantial evidence that the proposed tower would alter the character of the neighborhood. 61 Fed. Appx. at 219.

"Because 'few people would argue that telecommunications towers are aesthetically pleasing,' a local zoning board's 'aesthetic judgment must be grounded in the specifics of the case.'" *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818 (7th Cir. 2003)(quoting

*Southwestern Bell Mobile Systems, Inc. v. Todd*, 244 F.3d 51, 61 (1st Cir. 2001).[2]

In this case, only five residents explicitly objected to the visual impact of the tower. They objected primarily because they would see the tower from their houses and the tower would be "unsightly." These objections represent "generalized expressions of concern with aesthetics." The same objection could be made by any resident in any area where a tower was proposed. The Sixth Circuit has never found that lay opinion evidence alone constitutes substantial evidence supporting the denial of an application. *See MIOP, Inc. v. City of Grand Rapids*, 175 F.Supp.2d 952, 956-57 (W.D. Mich. 2001)(stating that, "[c]onsistent with Sixth Circuit precedent, this Court does not find lay opinion evidence sufficient to satisfy the substantial evidence requirement.")

Even if the objections of some of these residents should be considered as specific objections to the placement of the tower in this particular area because it is rural and residential, the objections of a few residents is not substantial evidence warranting the denial of an application where there is uncontradicted evidence that the tower is necessary and there is no other suitable location.

Looking at the Planning Commission's decision as announced at its April 26, 2007 meeting

---

[2] In *VoiceStream*, the Seventh Circuit found substantial evidence supporting the county's conclusion that the proposed tower would have an adverse visual impact on the surrounding area, where the National Park Service "voiced strong opposition to the tower, asserting that the unspoiled view of the St. Croix River Valley was a unique natural resource that deserved unusual protection." *Id*. at 832. The park service "supported its position with maps. . . that showed that a tower. . . would be visible from locations up to four miles away on the St. Croix River and Minnesota Highway 95." *Id*. Further, the "City of Marine on St. Croix, the St. Croix River Association, the Minnesota-Wisconsin Boundary Area Commission and several members of the public expressed the view that the riverway was a unique scenic resource that would be harmed by [VoiceStream's] proposed tower. *Id*. at 832.

In *Southwestern Bell Mobile Systems*, the First Circuit found that the zoning board's denial of an application was supported by substantial evidence where, "[a]lthough some of the evidence before the Board did consist of general statements that the tower was an eyesore, these statements did not dominate the debate. The majority of the objections to the visual impact of the tower specifically addressed whether this 150-foot tower was appropriate for this particular location, on the top of a fifty-foot hill in the middle of a cleared field. The location has no trees, was in the geographic center of town, would be visible at all seasons of the year, and would be seen daily by approximately 25% of the Town's population." *Id*. at 61.

and as reflected in the meeting minutes, the Planning Commission does not appear to have considered any of the evidence presented by Verizon.  If it did do so, it does not give any reason for giving the testimony by the individuals opposing the tower greater weight than the evidence presented by Verizon in support of the application.

 Further, as discussed, there are already towers located in the area, one of which is 265-feet tall. There is no evidence as to why the Planning Commission believed Verizon's tower was incompatible with the rural character of the area when other towers are located in the same vicinity.

Considering the record as a whole, including the objections of area residents, the evidence regarding the rural residential character of the area, and the evidence supporting the application presented by Verizon, the Court does not find substantial evidence supporting the denial of Verizon's application.

Given this conclusion, the Court need not address the Plaintiffs' state law claims that local zoning Ordinance No. 15, 1999 Series – which includes the provisions upon which the Planning Commission based its denial of the Verizon application – should be declared void, or that Verizon's application should be deemed approved under Kentucky state statute KRS § 100.987(4)(c).  These claims raise novel or complex issues of state law and,  accordingly, the Court will dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c).

### 3)      The Proper Remedy.

The TCA does not state the appropriate remedy for violations of 47 U.S.C. § 332(c)(7)(B)(iii).  Nevertheless, the Sixth Circuit has "repeatedly concluded that where the defendant denied a permit application, and that denial violated the TCA's 'in writing' and 'substantial evidence' requirements, the proper remedy is injunctive relief compelling the defendant to issue the requested

permit." *Wireless Income Props.*, 403 F.3d at 399.  Accordingly, the Court will issue an injunction compelling the Planning Commission to issue Verizon the permits necessary for the construction of the tower as proposed in its Uniform Application.

### IV.    CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1)      the Plaintiffs' Motion for Summary Judgment (Rec. No. 27) is GRANTED in part and DENIED in part.  The motion is granted as to the Plaintiffs' claim that the Defendants violated 47 U.S.C. § 332(c)(7)(B)(iii) and is otherwise DENIED;

2)      the Plaintiffs' state law claims that Ordinance No. 15, 1999 Series should be declared void pursuant to section 2 of the Kentucky Constitution and that their application should be deemed approved under Kentucky state statute KRS § 100.987(4)(c) are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c);

3)      the Defendants' Motion for Summary Judgment (Rec. No. 26) is DENIED;

4)      the Defendants are hereby ORDERED to GRANT Verizon's Uniform Application; and to issue all permits necessary for Verizon to construct the tower as proposed in the Uniform Application; and

5)      this matter is STRICKEN from the active docket of the Court.

Dated this 18th day of April, 2008.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**